# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 22-1753V**

| | |
|---|---|
| ABDUAZIZ ALANAZI,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: September 2, 2026 |

*William E. Cochran, Jr., Black McLaren, et al., PC, Law Offices, Washington, DC, for Petitioner.*

*Mia Guglielmi, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On December 1, 2022, Abdulaziz Alanazi filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine he received on December 16, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

[1] Because this Ruling/Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling/Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Because the parties could not informally resolve the issue of entitlement, Petitioner filed a Motion for Ruling on the Record. For the reasons set forth below, I find that Petitioner is entitled to compensation.

## I. Procedural History

On November 15, 2023, Respondent filed his Rule 4(c) Report recommending that Petitioner's claim be denied. Respondent argued that Petitioner had a history of left-shoulder pain prior to vaccination, that he could not establish the onset of his left shoulder pain began within 48 hours of vaccination, and that his pain was not limited to the shoulder in which he was vaccinated. Opp. at 8-11. Petitioner then filed a Motion for Ruling on the Record ("Mot.") on April 5, 2024. ECF No. 28. Respondent filed a Response on May 3, 2024 "(Opp."). Petitioner filed a Reply on May 15, 2024 ("Reply"). This matter is now ripe for adjudication.

## II. Relevant Medical History

A complete recitation of the facts can be found in the medical records, the Petition, declarations and affidavits, and in the parties' respective briefings. Petitioner's prior medical history includes treatment for gastroesophageal reflux disease, headaches, right side and lower back pain, chest pain, kidney stones, and numbness and tingling on the left side of his face. Ex. 3 at 6; Ex. 7 at 40, 54; Ex. 12 at 40.

On October 28, 2019 (a little less than two months before receiving the vaccination at issue), Mr. Alanazi went to urgent care complaining of chest pain and numbness on the left side of his face. Ex. 3 at 90. The medical notes state that he "had a similar problem in the past … The patient also reports numbness/tingling as an abnormal symptom related to the complaint." *Id*. During physical exam, Petitioner was found to have tenderness over his left chest, left shoulder, left upper arm, left trapezius muscle, left deltoid muscle and left clavicle. *Id*. However, his neck was supple with good range motion, and he had normal active range of motion of his left shoulder. Mr. Alanazi underwent an EKG, was assessed with chest pain, neuralgia, and neuritis, and was referred for a neurology consultation for his left sided facial numbness and tingling and history of migraines. It was mentioned that it was "possible that some of pt's symptoms could be d/t migraine or that his pain is musculoskeletal in origin and that some of these symptoms may be occurring as a result of pt's recent changes in sleeping positions." Ex. 3 at 90-100. Mr. Alanazi was encouraged to do range of motion exercises to help his left-sided pain. *Id*. at 95.

On December 16, 2019, Mr. Alanazi (then 37 years old) received a flu vaccine in his left deltoid at a Walmart located in Martin, Tennessee. Ex. 1 at 1-3; Ex. 5 at 64-65. In his affidavit, Petitioner states that the day following vaccination, his left shoulder was still

hurting at the site of the injection, and he had fever. Ex. 1 at 2. He states that he went to the pharmacy at Walmart to complain about his shoulder and was advised to ice his shoulder and take over the counter pain relief medication. *Id*. That same day, Mr. Alanazi took a picture of his left shoulder and sent it to his mother. *Id*.; Ex. 18 at 1. Mr. Alanazi also stated that he contacted a friend, who is a pharmacist, to get advice about his shoulder pain. *Id*. Petitioner stated that he was advised to ice his shoulder, which should lead to improvement. *Id*. Mr. Alanazi stated that based on this information, he believed that his pain from the injection would resolve. *Id*.

On December 18, 2019 (now two days after vaccination), Mr. Alanazi saw neurologist Earnest Murray, M.D., for a pre-planned appointment to evaluate complaints of headaches, numbness, tingling, and occasional discomfort “in the facial regions on the left side.” Ex. 3 at 76. Petitioner had an unremarkable general examination with normal muscle strength, bulk, and tone. *Id*. at 76-77. There is no mention of left shoulder issues in the record of this appointment. *Id*.

Several weeks later, on February 3, 2020, Mr. Alanazi underwent a brain MRI before seeing Dr. Murray in follow-up. Ex. 3 at 57-58. Dr. Murray reviewed the MRI, which was normal and did not show any acute findings, masses, lesions or evidence of a demyelinating process. *Id*. Dr. Murray’s assessment was atypical numbness and tingling in the facial region as well as occipital neuralgia, facial numbness, and tingling secondary to trigeminal neuralgia. *Id*. Mr. Alanazi was encouraged to utilize Tegretol if his symptoms became painful. *Id*.

Nearly six months passed before Petitioner had additional relevant medical treatment, seeing Dr. Murray on August 19, 2020. Ex. 3 at 38. Petitioner states in his affidavit that he had planned to follow up with Dr. Murray sooner but postponed due to the COVID-10 Pandemic. Ex. 1 at 2. The history from this record states:

> Patient comes back into clinic with worsening pain and coldness sensation in the left side of his face along with worsening pain and weakness of the left arm now. He did not describe really a lot of the arm pain to me during his last clinic visit. *States he received a flu shot back in December and has had some symptoms of pain in the deltoid region on the left side since that time*. Now is having significant pain and coolness sensation going down into the entire left arm. Also developing some weakness in the hand as well as in the overall strength of his arm. Patient does play a musical instrument is [finding] he is losing dexterity of the left hand.

Ex. 3 at 38-41 (emphasis added). A physical exam demonstrated grip strength weakness as well as weakness with elbow flexion extension, dysthesias noted in the entirety of the

left arm, and pain in the shoulder regions with rotation of the shoulder on the left side. Ex. 3 at 39. Dr. Murray ordered an MRI of the cervical spine, an electromyogram/nerve conduction study ("EMG/NCS") of the left arm, and referred Petitioner to physical therapy ("PT"). *Id*.

On September 9, 2020, Mr. Alanazi started PT at Star Physical Therapy reporting that his left shoulder symptoms began on December 19, 2019 – the date of vaccination. Ex. 5 at 3. He rated the pain in his left shoulder at 3 out of 10 at best, and 8 out 10 at its worst. *Id*. The notes from this visit state that Petitioner "reports the mechanism of onset as insidious onset but mentions he received a flu shot [and] a few days later [h]as numbness and pain in the L arm up to the neck to fingers. Patient reports anterior aspect of arm is cold to touch, frequent headaches, pain into axillary, and thoracic." *Id*. The physical therapist assessed Petitioner's symptoms as being consistent with bicep tendonitis, muscle spasms, and postural imbalance. *Id*. at 4. Mr. Alanazi was discharged from PT on October 22, 2020, after attending one session. *Id*. at 11.

On September 23, 2020, Mr. Alanazi underwent an EMG of his left shoulder (which yielded normal results) and an MRI of his cervical spine that revealed mild degenerative disease. Ex. 3 at 26; Ex. 6 at 18-19. Petitioner returned to Dr. Murray the same day, complaining of pain in his entire left arm exacerbated by rotation, especially around his shoulder. Ex. 3 at 7. Dr. Murray noted that Petitioner had received a "fairly extensive" neurological workup that was unremarkable, and that "[e]xamination [was] somewhat inconsistent." *Id*. at 8. Dr. Murray referred Mr. Alanazi to orthopedics for his left shoulder pain. *Id*.

On November 3, 2020, Mr. Alanazi saw Dr. Scott Johnson for an orthopedic consult for his left shoulder and lumbar spine. Ex. 6 at 46. Petitioner reported that his pain radiated from the shoulder on the left side and then to the arm and hand on the left side. *Id*. A physical exam of the left shoulder demonstrated tenderness on palpation, positive Hawkins and Neer's impingement tests, active ROM, flexion at 180 degrees, and abduction at 180 degrees. *Id*. The assessment was pain in left shoulder, suspected rotator cuff tendinitis, and trapezius strain. *Id*. The plan was physical therapy for left shoulder rotator cuff strengthening and range of motion exercises. *Id*. Mr. Alanazi was instructed to follow up in six to eight weeks or sooner if needed, and an MRI would be considered if there was no improvement. Ex. 6 at 46-53.

From December 15 - 31, 2020, Mr. Alanazi had two additional PT sessions. Ex. 5 at 12-22. The notes from these visits state that Petitioner believed his left shoulder pain occurred due to receipt of a flu vaccine. *Id*. at 12. He stated that after receiving his flu shot, he began having pain in his deltoid and bicep area, with occasional sharp shooting pain in his anterior shoulder. *Id*. Petitioner complained of decreased ROM due to the

stiffness of his shoulder and reported difficulties with daily living activities and household chores. *Id*. Upon examination of his left shoulder, Petitioner had flexion to 150 degrees and abduction to 170 degrees. *Id*. at 13. Petitioner was discharged from PT on December 31, 2020, for failing to attend sessions. *Id*. at 22.

On January 5, 2021, Mr. Alanazi saw Dr. Johnson for complaints of aching pain in his upper left arm. Ex. 6 at 54. Petitioner reported that PT did not relieve his shoulder pain and that the pain occurred after receiving a vaccine in 2019. *Id*. at 56. Dr. Johnson referred Petitioner for an MRI. *Id*.

On January 7, 2021, Mr. Alanazi underwent an MRI of the left shoulder that demonstrated a tear along the base of the superior labrum from anterior to posterior, extending into the cephalad aspect of the posterior labrum. Ex. 6 at 12-13. On the MRI screen sheet, Mr. Alanazi listed the date of injury as December 16, 2019. *Id*. In his follow-up exam with orthopedics, Petitioner had full ROM and full strength, and Dr. Johnson recommended that Mr. Alanazi continue to attend physical therapy. *Id*. at 60.

On February 9, 2021, Mr. Alanazi filled out a patient health questionnaire at Star Physical Therapy reporting a flu shot injection injury. Ex. 5 at 23. That same day he underwent an initial evaluation for pain and stiffness in the left shoulder. *Id*. The assessment was left shoulder pain with limitations in ROM and strength which impacts his ability to perform daily tasks such as reaching overhead without pain or compensation. Mr. Alanazi continued with seven physical therapy sessions for his left shoulder through April 15, 2021. Ex. 5 at 23-63 and 79-84. Petitioner was discharged on May 13, 2021, for attendance issues. *Id*. at 63.

On May 27, 2021, Mr. Alanazi returned to orthopedics, where he saw Dr. Johnson, and complained of pain over his left lateral deltoid. Ex. 6 at 9. Petitioner reported that while PT had helped his ROM and strength, his lateral deltoid pain remained unchanged. *Id*. Dr. Johnson noted that Petitioner's MRI of his cervical spine was normal, the EMG of his left shoulder was normal, the MRI of his left shoulder was normal except for a "small labrum tear." *Id*. at 11. Dr. Johnson offered Petitioner pain management, which Mr. Alanazi declined. *Id*. Dr. Johnson then discussed with Petitioner that "[Dr. Johnson] had nothing further to offer him orthopedically." *Id*. Petitioner indicated that he understood. *Id*.

Over the next year (through May 2022), Mr. Alanazi had three appointments with his PCP for complaints of abdominal pain, Ex. 7 at 61, sore throat and jaw pain, *id*. at 67, and an earache, *id.* at 71, as well as one visit to urgent care for gout, Ex. 12 at 9. Petitioner did not mention having shoulder pain in any of these visits, however, and sought no other shoulder-specific treatment in this timeframe. Ex. 7 at 63, 69, 73; Ex. 12 at 9.

On May 13, 2022, Mr. Alanazi went to urgent care complaining of pain radiating from his left shoulder to his left wrist since "Jan[uary] 2021 [sic] after a flu injection." Ex. 12 at 6. He stated that the numbness and tingling in his left shoulder and wrist had worsened over the weekend. *Id*. 5 at 1.

On November 17, 2022, Mr. Alanazi saw Daewoong Lee, M.D., for pain management due to his left shoulder and arm pain. Ex. 19 at 13-14. Dr. Lee stated that Petitioner's condition may be radial neuropathy from a SIRVA, but that he would need an official EMG to verify the diagnosis. *Id*. at 13. Dr. Lee referred Petitioner to PT. *Id*. at 14. On December 12, 2022, pain management sent a new PT order because Mr. Alanazi had not scheduled any PT sessions. Ex. 19 at 26.

Mr. Alanazi had two additional visits with pain management on March 10 and April 28, 2023. Ex. 19 at 47; Ex. 20 at 5, 8. He had not yet begun PT sessions and Dr. Lee was awaiting the official report of Petitioner's EMG to determine whether it showed radial neuropathy. Ex. 19 at 47; Ex. 20 at 6. Dr. Lee noted that Petitioner had severe pain to touch, as well as both decreased ROM in his left arm and "uncertainties in exam findings" due to Petitioner's poor participation in PT. Ex. 20 at 8-9. Dr. Lee referred Petitioner to the emergency room. *Id*. at 9.

On May 17, 2023, Mr. Alanazi saw Jaclyn Crompton, NP, to establish care with a new primary care practice. Ex. 20 at 17. Petitioner reported he had been seeing pain management for shoulder and arm pain and that he was starting PT the next day. *Id*.

No additional records have been filed. In his affidavit, Mr. Alanazi states that despite all his treatment and care, he has not returned to baseline and still has pain in his left shoulder and deltoid area. Ex. 1 at 3.

## III. Legal Standards

For compensation to be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and

contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). The criteria for establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

## IV. Ruling on SIRVA Objections

*History of Pain, Inflammation or dysfunction or the affected shoulder prior to vaccination*

Respondent argues that Petitioner has not offered preponderant evidence to satisfy the first QAI criterion "because his pre-existing shoulder pain could explain his shoulder symptoms and there is no evidence in the record that this pain resolved before petitioner received the flu vaccine." Opp. at 9. Petitioner's examination at an urgent care center on October 28, 2019 (nearly two months before vaccination), included a notation that Petitioner experienced tenderness over the left shoulder, left upper arm, left trapezius, left deltoid, left clavicle, and left chest. *Id*.; Ex. 3 at 91. Respondent also notes that Petitioner's provider stated that Mr. Alanazi's pain could be musculoskeletal in nature, and encouraged him to do ROM exercises to help his pain. *Id*. In addition, Respondent states that "[t]he record does not reflect that petitioner's left shoulder, left upper arm, left trapezius, or left deltoid pain resolved before his December 16, 2019 vaccination." Opp. at 9. Thus, Respondent posits that Petitioner has not preponderantly satisfied the first SIRVA QAI criterion.

Review of the notes from this urgent care visit demonstrates that it must be viewed in a larger context. In the history of present illness section of the notes, it states that Mr. Alanazi:

> presents with a chief complaint of constant chest pain/pressure of the chest since 6 days ago… The patient has had a similar problem in the past. Pt

> states that he has changed the way he has been sleeping lately. He states that he sometimes sleeps on the couch and rarely uses a pillow, but did not elaborate further.

Ex. 3 at 90. The triage notes further state that Mr. Alanazi "has chest pain and numbness in the left side of face for 6 days. He went to Martin's Medical Center and had an ECG and was told he had an abnormal heart rate and was given no other explanation. He also says his left eyebrow is numb and tender to touch." *Id*. In the physical exam section, it states that Mr. Alanazi had left shoulder pain, but it also noted that his entire left side had tenderness, including his left chest wall, his left upper arm, his left trapezius muscle and left clavicle. *Id*. at 91-92. Petitioner was ultimately diagnosed with "other chest pain," neuralgia, and neuritis. *Id*. at 92. And as Respondent noted, the treating physician indicated that Mr. Alanazi's pain could be musculoskeletal in nature, but also that his symptoms might be related to a migraine, and that "some of these symptoms may be occurring as a result of p[atien]t's changes in sleeping positions. Encouraged ROM exercises and sleeping with neck and shoulders in comfortable position." *Id*.

Thus, at the time of this urgent care visit, Mr. Alanazi's chief complaint was not left shoulder pain, but chest pain affecting his entire left side, and most likely caused by his sleeping position. Mr. Alanazi was encouraged to return if his symptoms worsened, which he did not. In addition, Petitioner was referred for a CT scan of his head and brain, and no treatment was prescribed for his left shoulder. Finally, it is unlikely that Mr. Alanazi would have received the flu vaccine in his left shoulder if he had continued to experience any pain in his left shoulder as Respondent proposes. Thus, the evidence preponderates in favor of a finding that Mr. Alanazi did *not* have a have history of pain, inflammation or dysfunction of the affected shoulder that would explain his left shoulder symptoms after vaccination.

*Onset*

Respondent next argues that Petitioner did not likely experience shoulder pain within 48 hours of vaccine administration. Opp. at 10. Respondent highlights Petitioner's pre-existing shoulder pain; his delay in reporting pain following vaccination; his intervening visits with Dr. Murray, with an affirmative denial of weakness in his extremities and objective signs of normal muscle strength, bulk, and tone two days post-vaccination; his report of insidious onset; his inconsistent reports of onset dates; and a treatment gap. *Id*.

While Respondent has identified potential issues with onset, these objections are ultimately unpersuasive. First, it appears that Mr. Alanazi *did* report his left shoulder pain to Dr. Murray in one of the intervening visits that Respondent identifies above (even if the

record itself is silent). After vaccination, Mr. Alanazi saw Dr. Murray on December 18, 2019, February 3, 2020, and August 19, 2020. During the August 19, 2020 visit, the notes state:

> [p]atient comes back into clinic with worsening pain and coldness sensation in the left side of his face along with *worsening pain and weakness of the left arm now. He did not describe really a lot of the arm pain to me during his last clinic visit.* States he received a flu shot back in December and has had some symptoms of pain in the deltoid region on the left side since that time. Now is having significant pain and coolness sensation going down into the entire left arm…

Ex. 3 at 38 (emphasis added). The statement that Petitioner "did not describe really a lot of the arm pain to me during his last clinic visit," allows for the inference that Mr. Alanazi mentioned in some respect some degree of left shoulder pain during his February 2020 visit. This is consistent with Petitioner's statement in his affidavit, where he stated that he told Dr. Murry about his shoulder pain at one or both of the prior visits. Ex. at 1-2.

Furthermore, there are a number of references in the record where Mr. Alanazi clearly associates his left shoulder pain with his vaccination, and identifies an immediate to 48-hour onset as well. *See*, e.g., Ex. 3 at 38-41 ("[s]tates he received a flu shot back in December and has had some symptoms of pain in the deltoid region on the left side since that time"); Ex. 5 at 12 (during an initial PT evaluation, Petitioner stated that "believes his L[eft] shoulder pain occurred due to having a flu shot. P[atien]t states receiving a flu shot and began having pain into his deltoid and biceps area."); Ex. 6 at 54-56 (During an orthopedic follow up, it is noted that Petitioner "continues to have pain in left shoulder, lateral aspect. He states this occurred after receiving a vaccine injection in 2019"); Ex. 6 at 12-13 (Intake sheet for MRI states "date of injury: 12/16/19"); Ex. 5 at 26 (At an initial PT evaluation, it notes "[t]he patient reports the mechanism of onset as getting a flu shot."); Ex. 19 at 12 ("Abdulaziz Alanazi is a 40 year old male with pertinent PMH as below who presents with left deltoid pain 2/t presumed SIRVA…Timing/onset: 2019- soreness 1 day post flu shot.")

Mr. Alanazi also describes an immediate onset of his shoulder pain in his affidavit, and provided a photograph of the vaccine administration site. Ex. 1 at 1-2; Ex. 18 at 1. Petitioner alleges that on the day of vaccination, he "took a picture of my left shoulder, sent it to my mother and explained to her my painful situation. I also contacted a friend who is also a pharmacist to get advice about the intense left shoulder pain at the site of injection. He advised me to ice my shoulder and that it should get better." Ex. 1 at 1-2. And the treatment gap occurred in the midst of the 2020 Pandemic, which began in March

2020, a period of time in which individuals avoided medical care unless of an emergency character. Thus, I find that Petitioner has met the 48-hour onset requirement.

*Pain Limited to Shoulder in which Petitioner was Vaccinated*

Respondent next argues that Petitioner often described pain outside of his shoulder, reaching to his wrist or hand. This objection by Respondent finds better evidentiary support, but preponderant evidence still supports the conclusion that Petitioner's primary complaints related to his shoulder. A close look at the record demonstrates that Petitioner's symptomology related to areas outside the left deltoid region mostly pertain to complaints of numbness and tingling as opposed to pain. *See* e.g., Ex. 3 at 12 (complaints of left arm numbness and tingling extended into the elbow, wrist, and fingers); Ex. 3 at 6 (complaints of left arm tingling which extended into his left hand, fingers, and thumb).

By contrast, references to pain and limited range of motion are more specifically limited to the left shoulder. *See* Ex. 3 at 39 (On August 19, 2020, physical exam by his neurologist demonstrated pain in the shoulder regions with rotation of the shoulder on the left side); Ex 5 at 4 (on September 9, 2020, assessed by his physical therapist with signs and symptoms consistent with bicep tendonitis of left shoulder); Ex. 6 at 49 (on November 3, 2020, assessed by his orthopedist with left shoulder pain); Ex. 5 at 14 (on December 15, 2020, assessed by his physical therapist with left shoulder pain); Ex. 6 at 56 (on January 5, 2021, assessed by his orthopedist with left shoulder pain that occurred after receiving a vaccine injection in 2019); Ex. 6 at 58 (on January 7, 2021, assessed by his orthopedist with left shoulder pain); Ex. 5 at 23 (on February 9, 2021, assessed by his physical therapist with left shoulder pain with limitations in ROM); and Ex. 6 at 11-12 (on May 27, 2021, physical examination demonstrated point tenderness with 0.5 cm nodular arear over his lateral deltoid and the assessment by his orthopedist was left shoulder pain). Also, as previously explained, Mr. Alanazi's cervical MRI and NCS/EMG studies were normal. Ex. 6 at 18-19; and Ex. 3 at 7-29.)

I thus find that Petitioner has met this requirement. To the extent that complaints of pain related to areas outside the deltoid region, they bear on damages (and hence treatment not specific to the shoulder will not be compensated or factored into any pain and suffering determination.

*Other Requirements*

Even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c), *i.e.*, receipt of a covered vaccine, residual effects of injury

lasting six months, etc. *See generally* § 11(c)(1)(A)(B)(D)(E). But those elements are established or undisputed.

Thus, based upon all of the above, Petitioner has met the elements for a SIRVA and is entitled to compensation. However, issues like non-shoulder related complaints will be taken into account in calculating damages.

## Conclusion

Based on my consideration of the complete record as a whole and for the reasons discussed in my ruling, **I find that Petitioner is entitled to compensation. A separate damages order will be issued.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master